Octavia O. HARRISTON, on her behalf and on behalf of the class of other persons similarly situated, Plaintiff–Appellant,

v.

CHICAGO TRIBUNE COMPANY, a corporation, Charles Brumback, President, John Sloan, Vice President, et al., Defendants–Appellees.

No. 91–3319.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1992.

Decided April 29, 1993.

Rehearing and Rehearing En Banc Denied July 8, 1993.

Hope F. Keefe, Robert J. Leoni (argued), Nicholas B. Svalina, Brunswick, Keefe & Deer, Blue Island, IL, for plaintiff-appellant.

Brenda H. Feis, John W. Powers (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants-appellees.

Before MANION and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

The Chicago Tribune Company ("Tribune"), an Illinois corporation that publishes and distributes the *Chicago Tribune* newspaper, employed Octavia Harriston ("Harriston"), a black woman, from 1965 to 1989. Over the years she received a number of promotions and pay increases. After receiving some critical performance appraisals, she brought a discrimination action against the Tribune, Charles Brumback, John Sloan, and Vincent Riordan ("Defendants"). Harriston appeals the district court's grant of the Defendants' motion to dismiss and motion for summary judgment. We affirm.

## I. Background

### A. Facts

The Tribune hired Harriston in 1965 as a part-time, voluntary advertisement taker. During the next fifteen years of Harriston's career with the Tribune, she was promoted to various positions within the Advertising Department. In 1980, the Tribune elevated her to the position of Display Salesperson in the Retail Advertising Department. The job was a grade nine in the Tribune's job classification system. As a Display Salesperson, Harriston's responsibilities included selling retail merchants advertising space and providing them with various marketing information. The Tribune eventually assigned Harriston to the North Michigan Avenue territory, which included the smaller retail stores along North Michigan Avenue and Oak Street in downtown Chicago. While Harriston worked in the Retail Advertising Department, she received good performance ap-

praisals each year. From 1980 to 1984, she never received a performance appraisal below "satisfactory," and she sometimes received evaluations of "above average" and "exceptional."[1]

In 1984, George Veon, the Tribune's Vice President of Employee Relations, asked Harriston whether she wanted to transfer from the Retail Advertising Department to the Employee Relations Department and become the EEO/Employment Manager. As EEO/Employment Manager, she would be responsible for hiring new employees, on-campus college recruiting, filing EEO (Equal Employment Opportunity) reports, and handling discrimination charges and lawsuits. The new position would be a promotion for Harriston, from a grade nine to a grade thirteen. She would be the first black person to hold the position. The people who held the position before her were white.

Harriston reluctantly accepted the position, which she considered a "great challenge" and a "major opportunity." Her hesitance stemmed from her concern that she was not qualified for the job. She lacked experience in personnel and employee relations and did not have a college degree. She was also concerned because she neither had experience in employee recruiting nor in screening employment applications, and she had no background in preparing EEO reports or in responding to EEO charges. During Harriston's tenure as the EEO/Employment Manager (from December 1984 until June 1987), Veon gave her only one formal performance evaluation, which occurred in June 1986. Even though she received a satisfactory evaluation, Harriston admitted to Veon that the position was a "struggle" for her and that she felt in "over [her] head."

When Harriston became the EEO/Employment Manager, the position was not eligible for participation in the Tribune's Management Incentive Fund ("Incentive Fund"), nor had it been prior to her arrival. The Incentive Fund is a discretionary bonus program that provides additional money each year to eligible members of management. Eligibility for the Incentive Fund does not depend on

job grade level or personal performance; it depends on the nature of the position the employee holds. According to the terms of the Incentive Fund Plan, to participate an employee must hold a position that has direct or indirect material influence on profitability, authority to supervise subordinate personnel, or administrative control over major company programs of revenue development or cost controlling significance. Eligibility in the Incentive Fund also assumes no right to participate in any sales incentive programs. The Tribune employs an outside consultant to assess the overall contribution a position makes to the Tribune's profitability.

In April 1987, John Sloan replaced Veon as the Vice President of Employee Relations. Sloan found Harriston's work performance as EEO/Employment Manager unsatisfactory, mainly because she lacked the skills a human resources manager needed. Sloan thought Harriston better suited for the work done in the Advertising Department, and he contacted Robert Holzkamp, the Vice President of Advertising, to determine the availability of any positions suitable for Harriston. Sloan later learned that an opening would be occurring for a Senior Sales Representative for the Michigan Avenue territory.

Sloan informed Harriston about the opening. He told her the position was a job grade level fourteen, one level above her position as the EEO/Employment Manager. He also told her that he might be restructuring the Employee Relations Department because of what the Tribune was now requiring the Department to accomplish. Harriston then spoke with Vincent Riordan, the Manager of the Central Division of Retail Advertising, who was in charge of the position. Riordan informed her that as Senior Sales Representative she would be responsible for the territory made up of North Michigan Avenue retail stores, an area similar to the one she had worked before she became the EEO/Employment Manager. Along with dealing with retailers, Harriston would be required to coordinate a new program in the area of cooperative advertising ("the RECAS project"). As Senior Sales Representative, Harriston

---

1. The various performance evaluations a Tribune employee could receive were (1) unsatisfactory, (2) marginal, (3) satisfactory, (4) above average, and (5) exceptional.

would be eligible for certain bonus programs, excluding the Incentive Fund.

Harriston accepted the position, effective June 1987. Her new salary was $51,500.00 per year, which was $2,000.00 more than she had made as the EEO/Employment Manager. Ronald Williams, a black man, replaced Harriston as the EEO/Employment Manager. Unlike Harriston, Williams had considerable experience in the area of human resources, something that was needed in light of the change in the Employee Relations Department. Sloan thereafter restructured the EEO/Employment Manager position, making it eligible for participation in the Incentive Fund.

In June 1988, after working as a Senior Sales Representative for one year, Harriston received her first performance appraisal. Riordan gave her a "satisfactory" rating, but criticized her sales level. Owing to her "satisfactory" evaluation, Harriston received a $2,060.00 salary increase, which brought her annual salary to $53,560.00. Still, throughout the remainder of 1988 Riordan continued to observe problems with Harriston's work. She failed to serve properly some of her advertising accounts, and the annual revenue in her territory had declined approximately $257,000.00 from the previous year.

To help Harriston increase her sales performance, Riordan removed her from the RECAS project in January 1989. Her sales did not improve. Revenue in her territory for the first four months of 1989 was down nearly $75,000.00. In May 1989, Riordan sent Harriston a memorandum expressing his displeasure with her sales performance and requested her to inform him how she planned to improve. Riordan did not threaten to fire Harriston. Harriston, however, failed to respond to the memorandum. Instead, she submitted a letter of resignation in June 1989. In the letter, she alleged age and race discrimination as well as retaliation against her both because she had filed complaints with the Equal Employment Opportunity Commission in the past concerning employment discrimination against her and because she had an employment discrimination lawsuit against the Defendants pending in a federal district court.

## B. District Court Proceedings

In October 1987, Harriston filed her initial complaint in the United States District Court for the Northern District of Illinois against the Tribune, Brumback, and Sloan. She raised a race discrimination claim under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and she included class allegations in the complaint about the Tribune's hiring and promotion practices regarding blacks. She did not move for class certification. In June 1988, Harriston amended her initial complaint to include age and race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. In June 1989, Harriston filed a second amended complaint, adding Riordan as a Defendant, and raising a constructive discharge claim under Title VII, she also raised a pendent state-law claim for intentional infliction of emotional distress.

The Defendants moved the district court to dismiss the section 1981 claim and the intentional infliction of emotional distress claim from Harriston's second amended complaint. In her section 1981 claim, Harriston alleged, in part, that Sloan had promised her a promotion if she left the EEO/Employment Manager position and accepted a position in the Advertising Department. She claimed the Defendants later denied her the promotion, because of her race, and instead demoted her to the position of Senior Sales Representative. In her pendent state-law claim for intentional infliction of emotional distress, Harriston alleged that she was subjected to a continuous series of intentionally discriminatory acts, including being precluded from supervising two white employees while she was EEO/Employment Manager, being reprimanded and harassed without cause, and being monitored with a telephone eavesdropping device. The district court granted the Defendants' motion and dismissed both counts from Harriston's second amended complaint for failure to state a claim on which relief could be granted.

In October 1989, Harriston then filed a third amended complaint, repleading her sur-

viving claims of Title VII and ADEA violations. In March 1990, she filed a fourth amended complaint to correct technical pleading errors, and in April 1990 (two and one-half years after filing her initial complaint) she filed a motion for class certification on behalf of all blacks who had been excluded from management positions at the Tribune and who had been denied the opportunity to participate in employee benefit programs, specifically the Incentive Fund. The district court denied the motion for class certification.

The Defendants moved for summary judgment on Harriston's Title VII and ADEA claims in her fourth amended complaint. In her Title VII claim, she alleged that the Defendants discriminated against her because of her race. Among other things, she claimed that the Defendants excluded her from participation in the Incentive Fund and demoted her to the position of Senior Sales Representative, after she had transferred to the Advertising Department from her position as EEO/Employment Manager. She also claimed that the Defendants constructively discharged her from her position as Senior Sales Representative by inducing her resignation through such acts of harassment as excluding her from office activities, assigning her one of the least lucrative sales territories, and not assisting her when she needed help with her job. In her ADEA claim, she raised most of the same allegations raised in her Title VII claim and also alleged that the Defendants replaced her as the EEO/Employment Manager with a younger man, Ronald Williams. The district court granted the Defendants' motion for summary judgment, 771 F.Supp. 933, and this appeal followed.

## II. Analysis

We have jurisdiction, 28 U.S.C. § 1291, to consider the four points Harriston brings on appeal: (1) whether the district court erred in dismissing her claim under section 1981; (2) whether the district court erred in dismissing her claim of intentional infliction of emotional distress; (3) whether the district court abused its discretion in denying her

motion for class certification; and (4) whether the district court erred in granting summary judgment against her on her claims of discrimination under Title VII and the ADEA.

### A. Dismissal of the Section 1981 Claim

■ In her first point on appeal, Harriston argues that the district court erred in dismissing her section 1981 claim, in which she alleged the Tribune failed to promote her.[2] "We review the grant of a motion to dismiss *de novo." Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991). "It is well settled that, when reviewing the grant of a motion to dismiss, we must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff." *Id.* "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

*Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), governs this point on appeal. According to *Patterson,*

> the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981. In making this determination, a lower court should give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a *new and distinct relation* between the employee and the employer is such a claim actionable under § 1981.

---

2. Although Harriston raised other allegations in her section 1981 claim, she appeals only the

district court's ruling regarding the Tribune's alleged failure to promote her.

*Id.* at 185, 109 S.Ct. at 2377 (emphasis added).[3] Although we have pointed out in the past the difficulty in applying the "new and distinct relation" standard, *Taylor v. Western & S. Life Ins. Co.*, 966 F.2d 1188, 1200 (7th Cir.1992), we have no difficulty applying it here. The allegations Harriston made in her second amended complaint do not show the opportunity for a new and distinct relation between herself and the Tribune. She alleged that she relinquished her position as the EEO/Employment Manager for a promised promotion in the Advertising Department, a promotion she claims did not materialize. She insists the Tribune instead demoted her to the position of Senior Sales Representative, even though she received a $2,000.00 pay raise and a job level increase.

Accepting her allegations as true and construing all reasonable inferences in her favor, we cannot say that the alleged promotion she claims she did not receive would have changed the terms of her contractual relationship with the Tribune. She stated no facts to explain what her alleged promotion would entail—job type, responsibilities, grade level. Because she did not state facts to demonstrate that the alleged promotion would have caused any meaningful, qualitative change in her duties or responsibilities, *see id.*, we rule that the allegations in her second amended complaint do not contain sufficient facts to outline a cause of action under section 1981.

Although Harriston argues on appeal that we should remand this matter to the district court to allow her to present evidence to support her section 1981 claim, we find no merit in her argument. She already had three opportunities at the district court level to set forth the necessary facts to show that the alleged promotions caused a meaningful,

qualitative change in her job duties or responsibilities. (She amended her initial complaint twice before the court dismissed her section 1981 claim.) Besides, even on appeal she has offered no facts to show that her alleged promotion would have resulted in a new and distinct relation between herself and the Tribune. Accordingly, we affirm the district court for dismissing Harriston's section 1981 claim.

**B. Dismissal of the Pendent State–Law Claim**

In her second point on appeal, Harriston contends that the district court erred in dismissing her intentional infliction of emotional distress claim from her second amended complaint. We review the district court's decision *de novo*, "assume the truth of all well-pleaded factual allegations," and make all reasonable inferences in favor of Harriston. *Prince*, 940 F.2d at 1106.

The elements of a cause of action in Illinois for intentional infliction of emotional distress are as follows:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress.

*McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). " 'Liability [for intentionally inflicting emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency....' " *Public*

---

**3.** Although mentioned by none of the parties, we note that the Civil Rights Act of 1991 overruled the new and distinct relation standard of *Patterson*. *Taylor v. Western & S. Life Ins. Co.*, 966 F.2d 1188, 1199 (7th Cir.1992). But, because the Civil Rights Act of 1991 is not retroactive in application, *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225 (7th Cir.), *petition for cert. filed*, 61 U.S.L.W. 3446 (U.S. Dec. 3, 1992) (No. 92–977); *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992), *Patterson* applies to this point on appeal, which

the district court disposed of in October 1989 prior to the enactment of the Act. We also note that the United States Supreme Court has granted certiorari to determine whether the Civil Rights Act of 1991 applies to cases pending when the Act went into effect. *Landgraf v. USI Film Prods.*, — U.S. —, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993). And, the issue of retroactivity is currently before this full court in *Mojica v. Gannett Co.*, 986 F.2d 1158 (7th Cir.1993) (per curiam) (rehearing en banc granted before the issuance of the panel opinion).

*Fin. Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Moreover, " '[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.' " *Id.* (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). We judge the facts of each particular case by an objective standard to determine whether the alleged conduct was extreme and outrageous. *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir.1989).

■ Harriston alleged that the Defendants conducted a continuous series of intentionally discriminatory acts, which caused her emotional distress. She argues on appeal that she was subjected to the following discriminatory conduct:

> not being allowed to supervise two white subordinates; being reprimanded for no reason; being refused participation in the Tribune's Management Incentive Fund; being forced out of her management position as EEO/Employment Manager; being promised a promotion in advertising she was never given; having a major account [Montgomery Ward] taken away from her and being given one of the least lucrative sales territories; being excluded from office activities; not being advised of changes in policy and being reprimanded for asking about such changes; being falsely accused of having poor sales; being threatened with discipline; having her telephone calls monitored through the use of an eavesdropping device; having her private vehicle damaged and vandalized on several occasions in the Tribune private parking lot and having Tribune management ignore her concern for her property and personal safety.

We rule that Harriston's allegations do not reach the level of extreme and outrageous conduct needed to establish a claim for intentional infliction of emotional distress. The Tribune's alleged conduct was not so severe that a reasonable person could not be expected to endure it, and it did not go beyond all possible bounds of decency. *Public Fin.*

*Corp.,* 4 Ill.Dec. at 654, 360 N.E.2d at 767. Therefore, we affirm the district court for dismissing Harriston's pendent state-law claim.

## C. Denial of Class Certification

In her third point on appeal, Harriston argues that the district court erred in denying her motion for class certification. She moved for class certification on behalf of all black people who had been excluded from management positions at the Tribune and who had been denied the opportunity to participate in such benefit programs as the Incentive Fund.

■ To obtain class certification, a plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23, that is, the plaintiff must meet " 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation.' " *General Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982) (quoting Federal Rule of Civil Procedure 23(a)). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976) (per curiam); *accord Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir. 1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). To have standing to sue as a class representative, the plaintiff "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). We reverse a district court's ruling regarding class certification only when we conclude that the district court abused its discretion in reaching its decision. *Patterson,* 631 F.2d at 480.

■ Harriston did not demonstrate that she was a member of the class she purported to represent. She brought her motion on behalf of all blacks whom the Tribune had failed to promote to management positions. Yet, the Tribune promoted her to the management position of EEO/Employment Man-

ager, and she has not pointed to one specific promotion to a management position that the Defendants denied her.[4] Consequently, because Harriston was not a member of the class she describes, the district court properly denied her motion for class certification.[5] *See Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982); *Rodriguez*, 431 U.S. at 403–04, 97 S.Ct. at 1896–97.

■ Also, Harriston did not demonstrate that she was an adequate representative of the class. Despite the class action allegations raised in her initial complaint, she waited two and one-half years before she moved for class certification. Such a delay is reason for denial of class certification, because Harriston failed to timely protect the interests of the class members. *See, e.g., id.* at 404–05, 97 S.Ct. at 1897. She maintains, however, that she waited to file the motion because she needed to participate in discovery before she could adequately determine the viability of class certification. Even so, she has not shown that discovery produced any new evidence to demonstrate the need for class certification. The district court, as a result, did not abuse its discretion in denying Harriston's motion for class certification.

*D. Granting of Summary Judgment*

In her fourth and final point on appeal, Harriston contends that the district court erred in granting summary judgment on her claims under Title VII and the ADEA.[6] She maintains that genuine issues of material fact exist, thus warranting a trial: (1) whether she "was demoted when she was removed from her position as EEO/Employment Manager and given the position of Sales Representative, since this was a non-management position"; (2) whether she was eligible for the Incentive Fund; and (3) whether the Defendants created an improper working environment for her, causing her constructive discharge.

■ We review *de novo* a district court's decision to grant summary judgment, viewing the facts and drawing all reasonable inferences therefrom in favor of the nonmoving party. *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992). Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Based on this standard of review, we conclude that the district court properly entered summary judgment against Harriston; Harriston has not shown us otherwise. First, she was not demoted when she became the Senior Sales Representative. Her annual salary increased by $2,000.00 and she received a job-level upgrade. She claims on appeal, though, that the entire salary and benefit package should be considered. She argues that once she left her position as EEO/Employment Manager, the position became eligible for participation in the Incentive Fund, which would have given her greater benefits than she had received in her position as Senior Sales Representative.

---

4. As noted in Part II.A of this opinion, Harriston's claim that the Defendants denied her a promised promotion in the Advertising Department after she left the EEO/Employment Manager position is without merit. Nothing indicates the nature of that alleged promotion.

5. Harriston also brought the motion for class certification on behalf of all blacks denied access to the Incentive Fund. As discussed in Part II.D of this opinion, Harriston was not denied the right to participate in the Fund because of her race.

6. The district court determined that Harriston failed to establish a *prima facie* case for either her Title VII claim or her ADEA claim. *Harriston v. Chicago Tribune Co.*, 771 F.Supp. 933, 937, 939 (N.D.Ill.1991). Under either claim, Harriston needed to show that the Tribune demoted her. *Id.* Because she failed to do so, the burden of production never shifted to the Defendants "to articulate a legitimate, non-discriminatory reason for [their] action." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1243 (7th Cir.1992).

# 705

Harriston has not, however, presented us with evidence to show that participation in the Incentive Fund would have provided her with greater benefits and, therefore, has not supported her position that she was demoted when she took the job as Senior Sales Representative.

In addition, she argues that she was demoted because the position of Senior Sales Representative did not carry the title of manager. Nevertheless, in comparison with the EEO/Employment Manager position, her position as Senior Sales Representative had a higher job level in the Tribune's job classification system, which indicates that the position was more important to the Tribune than the position of EEO/Employment Manager. As such, we find no significance in the managerial/nonmanagerial distinction in this case, and we hold that the Tribune did not demote Harriston.

Second, Harriston has not shown that she was excluded from participation in the Incentive Fund because she was black. Eligibility for the Incentive Fund is determined not by job performance or job level, but by the nature of the position the employee holds. Participation in the Incentive Fund was traditionally unavailable to the EEO/Employment Manager. The people who held the position before Harriston were white and could not participate in the Incentive Fund, just as she could not. After Harriston left the position to become a Senior Sales Representative, Ronald Williams, a black man, took over. Unlike Harriston, Williams had extensive experience in the field of human resources, something that was needed for the position because of the restructuring of the Employee Relations Department. Once Williams became the EEO/Employment Manager, Sloan broadened the scope of the position to make it eligible for the Incentive Fund. Thus, because Williams, a black man, was the first EEO/Employment Manager to participate in the Incentive Fund, Harriston has not shown that her exclusion from the Fund was based on race. The Tribune treated her the same as it treated the white people who held the position before her.

Third, Harriston has not shown that she was constructively discharged. To es-

tablish a constructive discharge claim, Harriston needed to show that the Tribune made her working conditions so intolerable that she was forced to resign involuntarily. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Harriston alleged that she was subjected to such forms of discrimination as being excluded from office activities, being reprimanded without reason, and being given one of the least lucrative sales territories, as well as not being assigned new accounts, not being allowed to supervise two white employees, and not being assisted by Riordan. We agree with the district court that the alleged conduct was not intolerable. Harriston's allegations do not show that her working conditions were so onerous or demeaning that she was compelled to leave her employment with the Tribune. *Id.; Henn v. National Geographic Soc'y*, 819 F.2d 824, 826 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). Accordingly, we affirm the district court for granting summary judgment in favor of the Defendants.

### III. Conclusion

The district court properly dismissed Harriston's section 1981 claim and her claim of intentional infliction of emotional distress. The district court also did not abuse its discretion in denying Harriston's motion for class certification, and it properly granted the Defendants' motion for summary judgment. Consequently, the district court is

AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting in part.

I concur in the court's opinion with the exception of Part II(B), which affirms the dismissal of Harriston's claim for intentional infliction of emotional distress. The district court found that Harriston had not alleged conduct sufficiently extreme and outrageous to state a claim for this tort under Illinois law:

All of these actions may occur within the normal workplace environment. Although such conduct is unpleasant, and very well may be the basis for a discrimination ac-

tion under Title VII, it simply does not rise to the level of outrageousness such that "no reasonable man could be expected to endure it." For the court to hold so would mean that any employee with a Title VII claim would also be able to bring an action for intentional infliction of emotional distress. Clearly, such a result would be inequitable in light of the plaintiff's burden set out in *Public Finance.*

*Harriston v. Chicago Tribune Co.,* No. 87 C 8875, Order at 9 (N.D.Ill. Oct. 6, 1989) (citing *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976)).[1] Among the acts that Harriston attributed to the defendants was the use of a listening device to intercept her telephone conversations at work. (Second Amended Complaint, Count V ¶ 24.) The district court failed to consider this allegation, but I find it significant.

I cannot agree that unauthorized wiretapping is a normal workplace occurrence that the reasonable employee should be expected to tolerate. Indeed, the Illinois constitution recognizes a right to be secure from "invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. of 1970, art. I, § 6. Thus, I believe that in an appropriate circumstance, eavesdropping could constitute conduct sufficiently extreme to support a claim for the intentional infliction of emotional distress. *See Scutieri v. Estate of Revitz,* 683 F.Supp. 795, 802 (S.D.Fla.1988) (wiretapping could be considered "outrageous and unconscionable" conduct sufficient to avoid summary judgment on a claim for intentional infliction of emotional distress); *see also, e.g., Wright v. Hasley,* 86 Wis.2d 572, 273 N.W.2d 319 (1979) (emotional distress claim based in part on housekeeper's eavesdropping).

At oral argument, the Tribune's counsel suggested that the eavesdropping allegation amounted to nothing more than speculation. Perhaps so, but the district court did not dispose of the emotional distress claim for lack of evidence, nor could it properly have done so on a motion to dismiss. *See Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992); *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985).[2] Looking solely at the complaint and the applicable law, as the district court was required to do and as we must, I cannot say that Harriston could prove no set of facts that would allow her to recover for intentional infliction of emotional distress. I therefore believe that the district court erred in dismissing this claim, and I respectfully dissent from the court's affirmance of the dismissal.

---

**1.** The district court made passing reference to the second element of an emotional distress claim—severe emotional distress—without discussing whether Harriston had pled this element in sufficient detail. (*See* Order at 8.) Defendants have not argued on appeal that the complaint was deficient in this regard.

**2.** Of course, if it turned out that Harriston's allegations lacked a reasonable basis in fact, Fed. R.Civ.P. 11 would supply a remedy.