7 F.3d 238
 17 Employee Benefits Cas. 2234, Pens. Plan Guide P 23893M
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gerald E. AILOR, William E. Burnette, Gary P. Byers, et al.,
Plaintiffs-Appellants,
v.
PENSION BENEFIT GUARANTY CORPORATION and United Steelworkers
of America, AFL-CIO-CLC, Defendants-Appellees.
 No. 92-4012.
 United States Court of Appeals, Seventh Circuit.
 Argued April 30, 1993.
Decided Sept. 30, 1993.
Rehearing Denied Nov. 18, 1993.
 
 1
 Before CUMMINGS and MANION, Circuit Judges, and EISELE, Chief District Judge*.
 
 ORDER
 
 2
 Gerald E. Ailor and twelve others ("plaintiffs") are former employees of Continental Steel Corporation ("Continental"). They sued the United Steelworkers of America ("Union") and the Pension Benefit Guaranty Corporation ("PBGC") to obtain benefits under Continental's Pension Plan A, in which the plaintiffs participated. The district court granted both the Union's motion to dismiss and the PBGC's motion for summary judgment. The plaintiffs moved the court for leave to file an amended complaint, which the court denied. The plaintiffs appeal and we affirm.
 
 I. Background
 
 3
 To put this lawsuit into context, we draw mainly from the facts that appear in In re Continental Steel Corp., 968 F.2d 1218 (7th Cir.) (Table), cert. denied, 113 S.Ct. 605 (1992), an unpublished order we issued in a related appeal.
 
 
 4
 The plaintiffs are former employees of Continental, which went bankrupt, and they participated in Continental's 1950 Employee Pension Plan A ("Plan A"). The PBGC is a wholly owned corporation of the United States that administers and enforces the pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act ("ERISA").
 
 
 5
 In early February 1986, the PBGC issued a Notice of Determination to Continental (the administrator of Plan A) and the Union (the plaintiffs' bargaining representative). The Notice stated that the PBGC had determined that Plan A was underfunded and that it should be terminated because the potential losses to the PBGC would be excessively high. The Notice also stated that the PBGC should be appointed the statutory trustee of Plan A to prevent any unreasonable deterioration of the financial condition of the Plan. The Notice further stated that the PBGC intended to apply for an order in a federal district court appointing it the statutory trustee and setting February 14, 1986, as the termination date of the Plan.
 
 
 6
 The PBGC then filed its application to terminate Plan A in a district court. To notify the Plan A participants, including the plaintiffs, a copy of the Notice of Determination was published in two major, local newspapers on February 17 and 18, 1986. The district court referred the matter to the bankruptcy court. The Union was permitted to intervene.[1] The Union objected both to the PBGC's application to terminate Plan A and to its proposed Plan termination date of February 14, 1986. The Union asserted that it continued to be the "official bargaining agent for the employees who have rights in and are beneficiaries of [the Plan]."
 
 
 7
 After converting Continental's bankruptcy from a Chapter 11 to a Chapter 7 proceeding, the bankruptcy court approved the termination of Plan A and appointed the PBGC as the statutory trustee. The bankruptcy court did not resolve the termination date of Plan A, however. Thus, the Union, the PBGC, and the bankruptcy trustee began negotiating the termination date. Two years later, in February 1988, the three entered into a settlement agreement setting February 25, 1986, as the retroactive termination date of Plan A. In March 1988, the bankruptcy court approved the settlement agreement. The plaintiffs appealed that ruling to this court, but lost because they failed to file a timely appeal.
 
 
 8
 The plaintiffs then requested a "Rule-of-65 Retirement" pension from the PBGC to receive their pension benefits early. For an employee to qualify for a "Rule-of-65 Retirement" pension, Plan A requires the employee to have at least twenty years of continuous service as of his last day worked, not yet be fifty-five years old, and have a combined age and years of continuous service that is at least sixty-five and not more than eighty. The PBGC denied the request, because, although the plaintiffs had the necessary twenty years of continuous service, they failed to meet the age requirement.
 
 
 9
 In April 1991, the plaintiffs filed this lawsuit seeking pension benefits from the PBGC pursuant to the "Rule-of-65 Retirement" provision. They also claimed that the Union had breached its duty of fair representation in failing to enforce the collective bargaining agreements in 1988. The district court granted both the Union's motion to dismiss and the PBGC's motion for summary judgment. The plaintiffs moved the court for leave to file an amended complaint, but the court denied that motion, and this appeal followed.
 
 II. Analysis
 
 10
 We have jurisdiction, 28 U.S.C. § 1291, to consider the various contentions the plaintiffs make on appeal. At the outset, we note that the plaintiffs' arguments lack focus and have no merit. We will, therefore, discuss only a few of them. As in the past, we again state our dissatisfaction with the performance of the plaintifs' attorney, Mark Garringer, in his presentation of his clients' claims on appeal.[2]
 
 A. Motion to Dismiss
 
 11
 The plaintiffs challenge the district court's ruling on the Union's motion to dismiss. We review a district court's ruling on a motion to dismiss de novo, assuming the truth of all well-pleaded factual allegations and making all possible inferences therefrom in favor of the plaintiff. Harriston v. Chicago Tribune Co., 992 F.2d 697, 701 (7th Cir.1993). We will not affirm the grant of a motion to dismiss unless we are convinced that the plaintiff can prove no set of facts to support his claim for relief. Id.
 
 
 12
 In granting the Union's motion to dismiss, the district court stated its frustration in attempting to isolate exactly what the plaintiffs were attempting to achieve in their lawsuit. We empathize with the district court's frustration and concur with the court that the plaintiffs appeared to have raised a claim against the Union for breach of fair representation. We also agree with the district court that the plaintiffs are time barred from bringing such a claim. A six-month limitations period governs the bringing of a claim for breach of fair representation. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 172 (1983); Johnson v. Graphic Communications Int'l Union, 930 F.2d 1178, 1182-83 (7th Cir.), cert. denied, 112 S.Ct. 184 (1991). The breach of fair representation the Union allegedly made was in 1988. The plaintiffs did not bring their lawsuit against the Union, however, until 1991, which is well outside the six month limitations period, and the plaintiffs have not advanced any tolling arguments.
 
 
 13
 We further agree with the district court that any claim the plaintiffs attempted to make under ERISA fails because they did not set forth sufficient facts to show what terms of Plan A the Union allegedly violated. The Union did not administer Plan A--Continental did--and nothing in the complaint links the Union with any wrongdoing regarding the administration of the Plan.
 
 
 14
 The plaintiffs, moreover, contend that the district court erred in not granting them leave to file an amended complaint. We disagree. The claims in the amended complaint are essentially the same as the ones raised in the initial complaint, with the main difference being a claim that the Union breached its duty of fair representation to the plaintiffs by moving to dismiss the lawsuit the plaintiffs had brought against it. (The Union's motion to dismiss was filed fewer than six months before the plaintiffs sought leave to file their amended complaint.)
 
 
 15
 The plaintiffs' claim is without merit. Although the alleged breach by the Union occurred within the six month statutory period, to breach the duty of fair representation the Union needed to act in an arbitrary, discriminatory, or bad faith manner. E.g., Souter v. International Union, 993 F.2d 595, 598 (7th Cir.1993). In defending itself against the plaintiffs' lawsuit, the Union did not breach its duty of fair representation. The Union was free to challenge the claims the plaintiffs brought against it. If we were to follow the plaintiffs' line of logic, any time an employee sued its representative union, the union would have to relent and accept defeat once the complaint were filed. Thus, we conclude that the district court did not err in denying the filing of the amended complaint; from what the plaintiffs pleaded in their proposed amended complaint, the plaintiffs could prove no set of facts to support their claim for relief. Harriston, 992 F.2d at 701.
 
 
 16
 The plaintiffs also contend that the settlement agreement, which set the termination date of Plan A as February 25, 1986, and which the bankruptcy court approved, cannot be used against them because they were not parties to its making. Although the plaintiffs are correct that they were not parties either to the negotiations leading to the settlement agreement or to the bankruptcy proceedings, the Union was a party and the Union was the plaintiffs' exclusive representative. See Johnson, 930 F.2d at 1181. It follows, then, that the terms of the settlement agreement bind the plaintiffs. See In re Continental Steel Corp., 968 F.2d 1218 (7th Cir.) (Table), cert. denied, 113 S.Ct. 605 (1992); see also Gray v. Lacke, 885 F.2d 399, 404 (7th Cir.1989) ("Under the doctrine of res judicata (claim preclusion), a final judgment on the merits of an action bars further claims by the parties or their privies based on that same action.") (emphasis added), cert. denied, 494 U.S. 1029 (1990).
 
 B. Motion for Summary Judgment
 
 17
 The plaintiffs challenge the district court's ruling on the PBGC's motion for summary judgment. "We review de novo a district court's order granting summary judgment, viewing the facts and drawing all reasonable inferences therefrom in favor of the nonmoving party." Brookins v. Kolb, 990 F.2d 308, 312 (7th Cir.1993). "Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Id. (quoting Federal Rule of Civil Procedure 56(c)). "Summary judgment is appropriate only in circumstances where 'the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).
 
 
 18
 To be eligible for a "Rule-of-65 Retirement" benefit, each of the plaintiffs needed to meet the following criteria before Plan A terminated on February 25, 1986: (1) have at least twenty years of continuous service as of his last day worked; (2) have not attained the age of fifty-five years; and (3) have a combined age and years of continuous service of at least sixty-five and not more than eighty. Continental Pension Plan A, § 2.7.
 
 
 19
 The plaintiffs assert that they each had twenty or more years of continuous service with Continental. That may be true, but they have not shown that they met the age requirement to qualify for the "Rule-of-65 Retirement" benefit. That is the problem here. When Plan A terminated on February 25, 1986, the plaintiffs had yet to satisfy the conditions required of them to establish a "nonforfeitable" right to a "Rule-of-65 Retirement" benefit. 29 U.S.C. § 1301(a)(8); 29 C.F.R. § 2613.6(a). To overcome that difficulty, the plaintiffs appear to want us to disregard the date of February 25, 1986, as the termination date of Plan A. Unfortunately for the plaintiffs, we cannot ignore the termination date stated in the settlement agreement, which the bankruptcy court approved. The PBGC is only able to guarantee the amount of benefits that have vested at the time a benefit plan terminates. 29 C.F.R. § 2613.3; see In re Pension Plan for Employees of Broadway Maintenance Corp., 707 F.2d 647, 649 (2d Cir.1983); Hackett v. Pension Benefit Guar. Corp., 486 F.Supp. 1357, 1366 (D.Md.1980).
 
 
 20
 February 25, 1986, was the cut-off date for the plaintiffs to have satisfied the necessary conditions to obtain a "Rule-of-65 Retirement" pension benefit. After that date, the plaintiffs were unable to obtain a "nonforfeitable right" to such a benefit. 29 C.F.R. §§ 2605.5(a)(3), 2613.6(a); Mead Corp. v. Tilley, 490 U.S. 714, 725 (1989) ("The PBGC has consistently maintained that, for purposes of its guarantee ... the characterization of benefits as forfeitable or nonforfeitable depends upon their status before plan termination."). After the February 25, 1986, termination of Plan A, the PBGC had no legal or other obligation to pay benefits to Continental employees who had yet to become eligible for the "Rule-of-65 Retirement" pension benefit. See 29 C.F.R. §§ 2613.3, 2613.5(a), 2613.6(a); Hackett, 486 F.Supp. at 1366.
 
 
 21
 Despite not qualifying for the "Rule-of-65 Retirement" pension benefit, the plaintiffs are not without some form of a pension. According to the PBGC, the plaintiffs are entitled to a Deferred Vested Pension. Under the Deferred Vested Pension, each plaintiff will receive his pension benefits when he reaches age sixty-five. If any plaintiff chooses to receive his retirement benefits before attaining age sixty-five, his monthly benefit amount will be actuarially reduced until he reaches age sixty-two, at which time he will receive the full amount of his guaranteed monthly benefit.
 
 
 22
 In closing, we reiterate a point the district court made. Although the plaintiffs are unable to participate in the "Rule-of-65 Retirement" pension benefits, "if it were not for PBGC taking over the unsound plans, it is likely that they would not have received any benefits at all." Granted, the plaintiffs wish to have their entire pension benefits today, but they should take some comfort in the fact that their benefits are secured for tomorrow.
 
 III. Conclusion
 
 23
 After considering the plaintiffs' arguments, we find them to have no merit. The district court properly granted the Union's motion to dismiss and the PBGC's motion for summary judgment. Consequently, the district court is AFFIRMED.
 
 
 
 *
 Hon. Garnett Thomas Eisele, Chief District Judge for the Eastern District of Arkansas, is sitting by designation
 
 
 [1]
 As explained in In re Continental Steel Corp., 968 F.2d 1218 (7th Cir.) (Table), cert. denied, 113 S.Ct. 605 (1992), the plaintiffs, and other Plan A participants, were denied the right to intervene
 
 
 [2]
 In a recent unpublished order, Wade v. Hopper, No. 91-3892 (7th Cir. June 17, 1993), we outlined Mark Garringer's history of being sanctioned by this court for bringing frivolous appeals. Those monetary sanctions did not deter Mr. Garringer from continuing his inappropriate behavior, however, as demonstrated by his disrespectful conduct in Wade. We were led, therefore, in Wade to take the following actions:
 it is ORDERED that Mark Garringer's name be stricken from the roll of attorneys admitted to practice before this court and we direct the Clerk to send copies of this order to the Disciplinary Commission of the Supreme Court of Indiana.