Jesus DAULO, Plaintiff,

v.

COMMONWEALTH EDISON, Philip Sta-
chelski, Donald Cook, Thomas Cook and
Anthony Broccolo, Defendants.

No. 94 C 6980.

United States District Court,
N.D. Illinois,
Eastern Division.

July 12, 1995.

Edward Ted Stein, Jill A. Friedman, Law Offices of Edward T. Stein, and Mary Lou Boelcke, Chicago, IL, for plaintiff.

Arthur B. Smith, Jr., Tracey Lynne Truesdale, Murphy, Smith & Polk, Glenn Douglas Newman, Carolyn K. Winick, Commonwealth Edison Co., Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Plaintiff Jesus Daulo filed a five-count First Amended Complaint ("Complaint") alleging, in short, race discrimination on the part of defendants Commonwealth Edison [sic] (plaintiff's employer) and Philip Stachelski, Donald Cook, Thomas Cook, and Anthony Broccolo (plaintiff's supervisors in one capacity or another).[1] Count I alleges race discrimination in violation of 42 U.S.C. § 1981. Count II alleges retaliation in violation of 42 U.S.C. § 1981. Count III alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. Count IV alleges retaliation in violation of Title VII. Count V is a supplemental claim alleging intentional infliction of emotional distress.

Defendants have filed two motions attacking the pleadings: a motion to dismiss for failure to state a claim, FED.R.CIV.P. 12(b)(6), and a motion to strike certain allegations, FED.R.CIV.P. 12(f).

## I.  BACKGROUND

The following background is drawn from the Complaint, taken as true for purposes of these motions. From 1978 through the present, plaintiff, a "non-white male of Filipino descent," was an employee of Commonwealth Edison, working at the Zion Nuclear Generating Station in Zion, Illinois. The individual defendants were in various supervisory positions over plaintiff. Over the course of his employment, plaintiff was consistently promoted with accompanying increases in responsibility.

Problems began around 1984 when defendant Stachelski assigned plaintiff to fish for him, clean the fish, and put the fish in Stachelski's truck. Plaintiff objected, but Stachelski told plaintiff he was the best fisherman because he was Filipino. No white co-worker ever had to fish for Stachelski. In approximately 1992, plaintiff began to refuse to fish, and defendant Stachelski made derogatory ethnic remarks toward plaintiff, and said he could get him fired. Plaintiff had to continue fishing through at least February 1993. The derogatory remarks toward plaintiff continued through July 1994, when plaintiff went on medical leave. Starting approximately 1992, plaintiff experienced physical, stress-related symptoms resulting from stress caused by his experience.

Plaintiff in late 1992 began to keep a diary of abusive and discriminatory behavior, occurring one to three times per month. Plaintiff was ridiculed for his accent. He also was accused of on-the-job errors actually made by white co-workers, resulting in demotion, retraining, and a shift transfer. Other instances included not being allowed to park in the reserved parking area while white co-workers were afforded that privilege. Furthermore, despite an order to the contrary by the Illinois Department of Labor, Commonwealth Edison never provided plaintiff access to his personnel file.

Plaintiff claims in 1993 and 1994 to have had three work-related injuries due to stress from the above. On July 14, 1994, he was hospitalized for acute psychotic depression. He is under the care of a physician and is on medical leave.

Defendants' motions are considered in turn.

---

1.  Within the body of the Complaint, plaintiff also identifies Michael Luis Montes as a defendant, although he is not so identified in the caption of the Complaint. Plaintiff has clarified in his responsive pleading that Michael Luis Montes is not a defendant in the Complaint. Since that person is not now docketed as a defendant, the court need not take any action to effect this result. To clarify the record, the court notes that it holds plaintiff to his representation, and, were it necessary, the court would strike said defendant.

## II. *MOTION TO DISMISS*

Defendants raise several theories: (1) that defendants Broccolo, Thomas Cook, and Montes should be dismissed from Counts I and II under Section 1981 for their lack of personal involvement in the alleged discriminatory acts; (2) that Count II, for retaliation under Section 1981, fails to state a claim for Section 1981 retaliation; (3) that all the individual defendants should be dismissed from Counts III and IV under Title VII because they are not "employers" subject to Title VII liability, and, in any event, were not named in the EEOC charge; (4) that Count IV for retaliation under Title VII fails because it is not "like or reasonably related to" the allegations in the charge filed with the Equal Employment Opportunity Commission; and (5) that Count V for intentional infliction of emotional distress fails to state a claim, and, as regarding defendant Commonwealth Edison, is barred by the exclusivity provisions of the Illinois Workers' Compensation Act, 820 ILCS 305/5(a), 305/11.

A Rule 12(b)(6) motion focuses on the allegations in the Complaint. *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988). The court "must accept as true all the plaintiff's well-pleaded factual allegations and inferences reasonably drawn from them." *Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir.1992). Claims can only be dismissed if it appears beyond doubt that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### A. *Section 1981 Allegations Against Broccolo and Thomas Cook*

#### 1. *Section 1981 Liability*

42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licens-

es, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981(b), an addition of the Civil Rights Act of 1991, makes clear that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Section 1981 liability against an individual demands personal involvement in discrimination. *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir.1985); *see also Johnson v. Resources for Human Development, Inc.,* 843 F.Supp. 974, 978–79 (E.D.Pa. 1994). No personal liability may be imposed on a corporate official "when that official is not alleged to have participated in the actual discrimination against the plaintiff." *Musikiwamba,* 760 F.2d at 753. Plaintiff does not dispute this point of law. (*See* Plaintiffs' Response to Defendants' Motion to Dismiss at 2–3.) The allegations against Thomas Cook and Broccolo, of course, need to be examined separately.

#### 2. *Allegations Against Thomas Cook*

There are not sufficient allegations against defendant Thomas Cook for the Section 1981 allegations against him to survive. Plaintiff alleges that on November 11, 1993, Cook originated a Problem Identification Form, attributing on-the-job errors to plaintiff. (Complaint ¶ 23.) There is no suggestion of impropriety on the part of Thomas Cook. Plaintiff does allege that later forms were filed against plaintiff for mistakes made by white co-workers, but there is no suggestion that Thomas Cook was involved. Thomas Cook is accordingly dismissed from Counts I and II without prejudice, since repleading may cure the deficiency.

#### 3. *Allegations Against Broccolo*

Plaintiff's Section 1981 case against Broccolo also does not survive. The sum total of the allegations against Broccolo is that plaintiff "sent letters to [him], informing him of the treatment he was receiving on the job." (Complaint ¶ 35.) This is not an alle-

gation that the defendant participated in "the *illegal act* initially giving rise to the corporation's liability." *Musikiwamba*, 760 F.2d at 753. Indeed, there is no suggestion that Broccolo mishandled the letters in any way. Accordingly the Section 1981 counts, Counts I and II, are dismissed without prejudice as to defendant Broccolo, again because it is possible that amended allegations could cure the deficiency.

## B. *Section 1981 Retaliation Allegations in General*

So far Counts I and II are dismissed without prejudice as to defendants Thomas Cook and Broccolo, but survive as to defendants Commonwealth Edison, Philip Stachelski and Donald Cook.

All defendants attack Count II, for Section 1981 retaliation, as generally insufficient to state a claim. All parties assume that there exists a retaliation cause of action under Section 1981. Any controversy is over whether a Section 1981 retaliation plaintiff may allege retaliation for seeking to enforce only the contract rights guaranteed by Section 1981, as this court has held. *See Buddingh v. South Chicago Cable, Inc.*, 830 F.Supp. 437, 441–42 (N.D.Ill.1993). *Contra Wilborn v. Primary Care Specialists, Ltd.*, 866 F.Supp. 364, 370 n. 1 (N.D.Ill.1994).

■ Any venture (or renewed venture) into that legal issue is avoided here. Even assuming, without revisiting it, that *Buddingh* was correct, plaintiff has pleaded retaliation against seeking to enforce Section 1981 rights. In *Buddingh*, the alleged retaliation was directly linked to the filing of the EEOC charge. *See Buddingh*, 830 F.Supp. at 442. Here, reading plaintiff's Count II with all due liberality, the count meets even the more stringent of the two possible approaches to Section 1981 retaliation claims. (*See, e.g.*, Complaint ¶ 50 (alleging defendants "punish[ed] and retaliate[d] against Plaintiff for his opposition to racial discrimination in employment").)

2. Having so ruled, there is no need to examine the effect of plaintiff's failure to name the indi-

In this respect, therefore, the motion to dismiss is denied. Count II survives as against defendants Commonwealth Edison, Philip Stachelski and Donald Cook.

## C. *Individual Title VII Liability*

■ Counts III and IV are Title VII counts. The present individual, supervisor defendants seek dismissal based on this court's holding in *Pacourek v. Inland Steel Co.*, 858 F.Supp. 1393, 1405–06 (N.D.Ill.1994) and the subsequent Seventh Circuit case, *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995), rejecting supervisor liability. *AIC Security Investigations* was an Americans with Disabilities Act case, not a Title VII case. Nonetheless the court's reasoning, by its own description, "obviously affects the resolution of the very similar question[ ] under Title VII...." *Id.* at 1282 n. 10. In any event, in *Pacourek* the court concluded no supervisor liability attached under Title VII, so even if the reasoning of *AIC Security Investigations* only guides, not dictates, the result, that is the result the court reaches.[2]

Insofar as defendants' motion seeks to dismiss all individual supervisor defendants from Counts III and IV, the motion is granted. Counts III and IV as against defendants Philip Stachelski, Donald Cook, Thomas Cook and Anthony Broccolo are dismissed with prejudice.

## D. *Count IV's Variation from EEOC Charge*

■ Counts III and IV so far have survived as against defendant Commonwealth Edison only. Count IV is a Title VII retaliation claim. All defendants argue (although only Commonwealth Edison now has a stake in it) that the retaliation claim is not contemplated by the EEOC charge. The inquiry is whether the retaliation claim is " 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *O'Rourke v. Continental Cas. Co.*, 983 F.2d 94, 97 (7th Cir.1993) (quoting *Jenkins v. Blue Cross Mutual Hosp. Ins., Inc.*,

vidual defendants in the EEOC charge.

538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976)). Liberal as the leeway may be in construing an EEOC charge, *see, e.g., Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188, 1195 (7th Cir.1992), there are limits, and the Seventh Circuit has not been kind to attempts to apply a discrimination EEOC charge to a retaliation suit. *See O'Rourke,* 983 F.2d at 97; *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 544–45 (7th Cir.1988). Here, as in *O'Rourke* and *Steffen,* the retaliation claim is not like or reasonably related to a charge of discrimination.

■ Plaintiff states he was proceeding *pro se* when he filed his EEOC charge, and for these purposes the court can assume that is true. No doubt that presumed fact gives plaintiff more leeway. But that fact does not mean there is no requirement for the charge at all.

■ For retaliation for the filing of the base EEOC charge *itself,* no subsequent EEOC charge is required. *See Steffen,* 859 F.2d at 545 n. 2. But on the EEOC charge in this case there is no retaliation claim. Missing from the charge is even the sort of hint of another claim that has prompted the Seventh Circuit court to allow a sex discrimination claim to proceed where only the race discrimination box was checked. *See Jenkins v. Blue Cross Mutual Hospital Ins., Inc.,* 538 F.2d 164, 168–69 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). So as far as alleged retaliation before the filing of the EEOC charge, defendants' motion is granted.

■ Plaintiff does argue, however, that one of the alleged illegal acts occurred in retaliation for the EEOC charge, specifically Complaint paragraph 39's allegation of the pulling of plaintiff's security badge. This is the allegation: "On May 18, 1994, Plaintiff arrived at work but could not get into the plant because his security clearance badge had been pulled and it was not at the gate. Plaintiff had to wait several hours outside to regain security clearance. Plaintiff never found out why his security badge was pulled nor who did it." (Complaint ¶ 39.) Because this is the only alleged act of retaliation that makes it past defendants' EEOC-charge argument, it is important to decide whether this allegation may be the act of retaliation. Two problems are seen. First, there is no allegation that the pulling of the security badge was retaliatory. But even assuming there were such an allegation, giving plaintiff all that leeway, paragraph 39 does not allege an actionable adverse employment decision.

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). There is no such allegation in paragraph 39.

Defendants' motion is granted insofar as it seeks dismissal of Count IV in its entirety. The count as against Commonwealth Edison is dismissed without prejudice, as amended pleadings may cure the defect. (Recall that the individual defendants are already out of Count IV with prejudice because Title VII does not impose supervisor liability.)

### E. *Failure of Count V to State an Emotional Distress Claim*

■ Finally defendants attack Count V, intentional infliction of emotional distress, arguing the count fails to state a claim. The elements of an Illinois cause of action for intentional infliction of emotional distress are as follows:

> "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress."

*Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 702 (7th Cir.1993) (quoting *McGrath v.*

*Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988)). Defendants maintain that Count V fails the outrageousness element as a matter of law.

In affirming a Rule 12(b)(6) dismissal of an emotional distress claim in the employment context, the *Harriston* court found a set of alleged facts, really standard facts in an employment discrimination case, not so outrageous as to give rise to the emotional distress claim. *Harriston,* 992 F.2d at 703. Plaintiff in his response brief has marshalled his allegations: "Plaintiff has endured extreme intentional humiliation (supervisor slapped Plaintiff on his hands in front of coworkers (¶ 21(c))), degradation (supervisor called him "Flip," referring to his Filipino origin (¶ 21(a))), and unequal treatment based upon Plaintiff's race which became retaliatory and punitive." No doubt the Seventh Circuit has directed district courts to take seriously the outrageousness requirement even at the pleading stage, but here Rule 12(b)(6) dismissal would be premature. Unlike in *Harriston* (as far as the court can tell), there is an allegation of race-motivated battery. Also, as in this court's *Buddingh* case, the Complaint at least supports a factual theory that the discrimination may be " 'retaliatory and punitive.' " *Buddingh,* 830 F.Supp. at 443 (citation omitted). A Rule 12(b)(6) dismissal on this basis is simply premature; the case must progress further. Of course, for the same reasons as discussed under section 1981 allegations, defendants Broccolo and Thomas Cook are dismissed from Count V, as there has been no allegation against them whatsoever that supports an emotional distress claim. Their dismissal from Count V is without prejudice, as amended allegations could cure the deficiency.

So far, then, only defendants Commonwealth Edison, Stachelski, and Donald Cook remain in Count V. Defendant Commonwealth Edison raises another issue under Count V as to whether the exclusivity provisions of the Illinois Workers' Compensation Act bar the emotional distress claim against it. Commonwealth Edison relies on two statutory provisions. Section 5(a) of the Act provides, "No common law or statutory right to recover damages from the employer ... or the agents or employees of ... [the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act...." 820 ILCS 305/5(a). Section 11 provides, "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act...." 820 ILCS 305/11. There is a pertinent exception to exclusivity, that "[t]he exclusivity provisions will not bar a common law cause of action against an employer ... for injuries which the employer or the alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564, 564 N.E.2d 1222, 1226 (1990). The parties have focused the court on the legal issue of whether this exception applies here. Of course the real question on this motion is whether the claimed exception applies under any set of facts consistent with the Complaint. That the alleged acts were inflicted, commanded or expressly authorized by Commonwealth Edison itself is nowhere the theory of the Complaint. An alter ego theory, however, is noticed by the Complaint. Although the job descriptions for the individual defendants are sketchy, it is possible given all reasonable inferences, that they could be proven to be managers who can act as alter ego. Accordingly, the exception to the exclusivity provision may apply. *See Johnson v. Federal Reserve Bank of Chicago,* 199 Ill.App.3d 427, 145 Ill.Dec. 558, 562, 557 N.E.2d 328, 332 (1990). Again, disposing of the issue through Rule 12(b)(6) would be premature.

Therefore, insofar as it seeks dismissal of defendant Commonwealth Edison from Count V, the motion is denied. Count V survives against defendants Commonwealth Edison, Stachelski, and Donald Cook.

### F. *Summary*

Defendants' Motion to Dismiss is granted in part and denied in part. Counts I and II

as against defendants Thomas Cook and Anthony Broccolo are dismissed without prejudice. Counts III and IV as against defendants Philip Stachelski, Donald Cook, Thomas Cook, and Anthony Broccolo are dismissed with prejudice. Count IV as against defendant Commonwealth Edison is dismissed without prejudice. Count V as against defendants Thomas Cook and Anthony Broccolo is dismissed without prejudice.

### III. *MOTION TO STRIKE*

Defendants also filed a motion to strike under Federal Rule of Civil Procedure 12(f). Under Rule 12(f), the court may strike from the Complaint any "redundant, immaterial, impertinent, or scandalous matter." FED. R.CIV.P. 12(f). Defendants seek to dismiss a few groups of allegations.

Paragraph 9 plaintiff agrees to strike, so in that regard, of course, the motion is granted.

■ Paragraphs 27 and 28 allege that plaintiff's employer put up roadblocks to his accessing his personnel file. These allegations may at the very least serve as background, and could be part of the alleged racism at work. The motion in this regard is denied.

■ Defendants also challenge paragraphs 14–16 and 18 on the basis that the actions described therein are time-barred. Plaintiff concedes, explicitly for paragraphs 14–16, and implicitly for paragraph 18, that "these facts, read alone, do not fall within the requisite time period and therefore may not be actionable themselves under Title VII." (Plaintiff's Response to Defendants' Motion to Strike at 3–4.) Plaintiff contends, however, that the facts will be background. Defendants have prompted quite a concession from plaintiff as to the viability of some older allegations. Nevertheless, to strike these allegations at this point as immaterial would be premature. That action would suggest the court has ruled on the admissibility of the facts, which cannot be done at this stage. Defendants' own authority concedes that " 'acts which were not the basis of the EEOC charges may be relevant as background [for] the timely claims....' " *Proffit v. Keycom Electronic Pub.*, 625 F.Supp. 400, 409 (N.D.Ill.1985) (quoting *Garcia v. Rush Presbyterian St. Luke's Medical Center*, 80 F.R.D. 254, 262 (N.D.Ill.1978)). Here the question is not ripe for a ruling.

Similarly, defendants may ultimately be right about the substance of paragraphs 31 through 34. The allegations appear to concern the actions of another entity, plaintiff's union, and therefore the substance may be inadmissible. But again, to rule the paragraphs immaterial would be premature. Plaintiff has a theory of admissibility, and is entitled to argue that at an appropriate time.

■ Finally defendants seek to strike plaintiff's prayer for compensatory and punitive damages from his Title VII claims. The asserted ground is that the section of the Civil Rights Act of 1991 providing for such damages under Title VII dictates that such damages can only be recovered where "the complaining party cannot recover under section 1981." 42 U.S.C. § 1981a(a)(1). At this point in the case the court will allow the Title VII prayer for relief to stand as an alternative pleading.

Defendants' Motion to Strike is granted in part and denied in part. Paragraph Nine of the Complaint is stricken.

### CONCLUSION

Defendants' Motion to Dismiss and Motion to Strike are both granted in part and denied in part as discussed in this Memorandum Opinion and Order. Defendants Thomas Cook and Anthony Broccolo are dismissed as party defendants.