**Jane DOE and Mr. Jane Doe, Plaintiffs,**

**v.**

**R.R. DONNELLEY & SONS COMPANY, Defendant.**

**No. IP 93–524C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 24, 1994.

Divina K. Westerfield, Westerfield & Associates, Carmel, IN, for plaintiffs.

Richard H. Schnadig, C. Elizabeth Belmont, Vedder, Price, Kaufman & Kammholz, Chicago, IL, Ariane Schallwig Johnson, Locke Reynolds Boyd & Weisell, Indianapolis, IN, for defendant.

BARKER, Chief Judge.

Defendant R.R. Donnelley & Sons Company ("Donnelley") moves for summary judgment on Counts I and II of Plaintiffs Mr. and Mrs. Jane Doe's ("Plaintiffs") Complaint. Defendant also moves to dismiss Counts III and IV of the Complaint. For the reasons stated below, we grant defendant's motion for summary judgment as to Counts I and II and defendant's motion to dismiss Counts III and IV.

## BACKGROUND

Donnelley prints and binds encyclopedias and books at its two plants (North and South) in Crawfordsville, Indiana. Plaintiff Mrs. Jane Doe has worked for Donnelley for eleven years as a Production Expediter, first temporarily and then after April 1985, regularly at the North Plant bindery, where she packaged and shipped her department's finished products. Throughout her bindery employment from April, 1985 to late December 1989, Charles Stewart supervised Plaintiff.

Plaintiff contends that during her employment with Donnelley, Stewart sexually harassed her by: 1) commenting on her clothing and stating that he thought she would "look nice in a bodysuit"; 2) asking what she wore to the gym when she worked out and what she wore at home and how she looked in it; 3) telling her how beautiful she was and asking her how much weight she had lost; 4) telling her during her 1988 annual performance evaluation, "[d]on't ever have an affair at Donnelley's because it's not worth it, someone will always get burned"; 5) patting her rear end on two occasions and after being told that such conduct offended Plaintiff, saying that he would not do it again. At no time did Plaintiff report the incidents involving Stewart to another Donnelley manager or supervisor.

Plaintiff also told Anthony Malandro, the company's Human Resources Supervisor, during a meeting in which she was disciplined for her tardiness and other matters that a co-employee, Curt Buethe left four "heavy breathing" voice messages for her. Buethe, who had initiated the complaint about Plaintiff's tardiness, denies making any such calls. The claim concerning Buethe is the only sexual harassment complaint Plaintiff ever brought to the attention of any member of Donnelley's supervision or management.

Other incidents of sexual harassment during her employment with Donnelley which Plaintiff raised for the first time in her Complaint and depositions include: 1) co-worker Ron Brown's hugging her and kissing her hand on various times of her employment; 2)

co-worker Mark Dagley's asking Plaintiff out on dates (even though she is married), inquiring if she tanned in the nude, questioning her about her lingerie and what she wore to bed, giving her a note which read "Fellatio— her on him/Cunninglus [sic]—him on her" and asking her if she knew what the words meant and asking Plaintiff whether she knew what "coitus interruptus" meant and explaining all terms to her; 3) co-worker Donny Williams' commenting that "whenever he wanted to feel good, he would come around and look at [Plaintiff's] breasts and that would make him happy" and asking her personal questions regarding her breasts and chest; 4) co-worker Bob Gilliland's telling Plaintiff that he "saw a singer [in Las Vegas] that looked like her and ... wished it had been her so that they could have fun together"; asking her "How about if you and I get a glass of sherry and go to a motel"; and on five other occasions, suggesting that Plaintiff and he "make love"; 5) co-worker Randy Stark's telephoning Plaintiff on three or four occasions and asking her what size her breasts were and stating when she visited the plant during her sick leave, "Good, now I can sexually harass you, because you are not [with the Company] anymore." Plaintiff never reported any of the above incidents involving her co-workers to any Donnelley manager or supervisor and never initiated any formal or informal complaint under Donnelley's policy prohibiting sexual harassment or the Company's internal grievance procedure.

In addition to all of these incidents of alleged harassment, Plaintiff claims that on September 10, 1992, around 8:00 p.m., she was raped by an unknown assailant while working in the South Plant's plate storage room after the lights had been turned off. After the rape, Plaintiff did not report the rape to anyone and returned to work, completing her shift. Donnelley was first apprised of the rape three months later when Plaintiff's lawyer informed the Crawfordsville plant manager about it. Plaintiff's husband first found out about the rape in the spring of 1993 when he opened mail addressed to Plaintiff from her lawyer.

Plaintiffs' Amended Complaint alleges four counts: Counts I and II are sexual harassment claims grounded in Title VII of the Civil Rights Act of 1964; Count III is a negligence claim based on premises liability for Plaintiff's rape; Count IV is a loss of consortium claim brought by Mr. Jane Doe.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wilson v. Williams,* 997 F.2d 348, 350 (7th Cir.1993); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### B. SEXUAL HARASSMENT CLAIMS

■ Title VII of the Civil Rights act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49

(1986). An "abusive environment" arises when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment...." 477 U.S. at 65, 106 S.Ct. at 2405.

There are two categories of sexual harassment—quid pro quo and hostile environment. In quid pro quo harassment cases, an employer or supervisor requires sexual favors from an employee or subordinate to obtain a job benefit or to avoid a detriment. *See* A. Conte, Sexual Harassment in the Workplace: Law and Practice (1990), at 15. In hostile environment harassment cases, no deal is sought or struck; however, the sexual harassment is so pervasive and debilitating to the employee that a hostile environment has been created from the verbal or physical abuses. *Id.*

### 1. Quid Pro Quo Sexual Harassment

We first consider whether quid pro quo harassment existed in this case. Plaintiff admitted in her deposition that during the course of her employment with Donnelley, no one offered to promote her in exchange for sexual favors nor did any manager or supervisor state that they would not take an adverse action against her in exchange for sexual favors. Deposition of Jane Doe, Vol. II, at 127. Plaintiff's only claim that in late 1989, a Donnelley supervisor told her that her supervisor Chuck Stewart promoted her to the head lay-up position because he "liked to look at her" does not meet the requirement for quid pro quo harassment. We find as a matter of law that no quid pro quo sexual harassment occurred.

### 2. Hostile Environment Sexual Harassment

Plaintiff's sexual harassment claims in Counts I and II rely therefore solely on a hostile environment sexual harassment theory. In order for a plaintiff to establish a prima facie case of sexual harassment based on "hostile work environment," she must show:

> (1) that she was a member of a protected group; (2) that she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment or affected a term, condition, or privilege of employment.

*See Meritor,* 477 U.S. at 63–69, 106 S.Ct. at 2403–07; *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1042 (2d Cir.1993); *Rennie v. Dalton,* 3 F.3d 1100, 1107 (7th Cir.1993) (quoting *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235, 1237 (7th Cir.1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990)). Most recently, the Supreme Court has noted that to determine whether the plaintiff's work environment is "hostile" within the meaning of Title VII, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* — U.S. —, —, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). In addition, the plaintiff must show that she was adversely affected by the conduct and that a reasonable person would also have been adversely affected. *See Brooms v. Regal Tube Co.,* 881 F.2d 412, 419 (7th Cir.1989); *Rennie,* 3 F.3d at 1107. Moreover, the harassment must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405, 91 L.Ed.2d 49 (1986) (citations omitted).

Two recent Seventh Circuit cases show the level of misconduct that is necessary before hostile environment sexual harassment is actionable. In *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993), the Seventh Circuit found no actionable sexual harassment where a supervisor asked plaintiff for dates, called her a "dumb blond," put his hand on her shoulder several times, placed "I love You" signs in her work area and attempted to kiss her in a bar.

In *Saxton v. American Telephone and Telegraph Co.,* 10 F.3d 526 (7th Cir. (Ill.) 1993), the Seventh Circuit found no actionable hostile work environment sexual harassment where a supervisor placed his hand on plaintiff's leg above the knee several times, rubbed his hand along her upper thigh once, pulled her into a doorway and kissed her for two to three seconds, and lurched at her as if to grab her (three weeks later). Based on these recent cases and the similarity of their facts with those in this case [1], we find that the alleged incidents of harassment by Charles Stewart, plaintiff's supervisor, and Curt Buethe, the one co-worker whose alleged misconduct she reported, even if proven, would not rise to the level of actionable sexual harassment.

The other incidents of sexual harassment claimed by Plaintiff are more serious, especially her rape by an unknown assailant allegedly occurring on September 12, 1992. If we take as true all of Plaintiff's allegations against her co-workers (especially the alleged unknown assailant), it is likely that she could satisfy the stringent factual predicates for hostile environment sexual harassment as analyzed in *Saxton* and *Weiss.*

However, the real issue in this case is not whether Plaintiff's co-worker's alleged misconduct constitutes hostile environment sexual harassment under the Supreme Court and Seventh Circuit case law. Instead, the key question is whether defendant Donnelley, as the employer of Plaintiff, is liable for the harassment by Plaintiff's co-workers, even assuming such alleged misconduct is actionable. In *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 320 (7th Cir.1992), the Seventh Circuit held that employers are not strictly liable under Title VII for sexual harassment engaged in by their employees. "An employer is liable for such harassment only 'if the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial actions.'" *Juarez,* 957 F.2d at 320 (quoting *Brooms v. Regal Tube Co.,* 881 F.2d 412, 420 (7th Cir.1989)). Most recently, in *Saxton,* the Seventh Circuit noted:

> Under [the fellow servant rule], as under Title VII, the employer, provided it has used due care in hiring the offending employee in the first place, is liable for that employee's torts against a co-worker only if, knowing or having reason to know of the misconduct, the employer unreasonably fails to take appropriate corrective action, The employer acts unreasonably either if it delays unduly or if the action it does take, however promptly, is not reasonably likely to prevent the misconduct from recurring.

*Saxton,* 10 F.3d at 535 (7th Cir. (Ill.)) (quoting *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990)).

The rationale behind these rules is simple: unless the employer has knowledge of employee misconduct, it can take no corrective or remedial measures to address the abusive behavior. To hold an employer liable regardless of its level of knowledge would be to impose a strict liability standard, which has been expressly rejected by the Supreme Court in *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408.

Here no genuine issues of material fact exist regarding whether plaintiff brought any of the incidents of her co-worker's misconduct (including her rape) to the attention of Donnelley's upper-level supervisors or managers other than Curt Buethe's alleged heavy breathing. We conclude as a matter of law that because Plaintiff never brought to defendant's attention all other alleged incidents of harassment and because Plaintiff's co-workers do not act as the employer's agents, Donnelley should not be held liable for the incidences of sexual harassment when it had not been given an opportunity to remedy the situation. *See* Conte, Sexual Harassment in the Workplace, at 60.

In *Meritor,* the Supreme Court did note, however, that the "absence of notice to an employer does not necessarily insulate that employer from liability." 477 U.S. at 72, 106 S.Ct. at 2408. *See also Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987) (reject-

---

**1.** For example, the alleged offensive touching by Plaintiff's supervisor is similar to the conduct that occurred in *Saxton.* The alleged heavy breathing messages left by Buethe are no worse than the non-actionable misconduct of the supervisor in *Weiss.*

ing lack of notice as an absolute defense). Nor does the existence of a grievance procedure and a policy against discrimination preclude a finding of liability. 477 U.S. at 72–73, 106 S.Ct. at 2408–09. Thus, our holding should not be construed to require plaintiffs to give affirmative notice to their employers or supervisors that they have been harassed in every case.[2] We find only that to survive summary judgment in this case, Donnelley must have had some notice or knowledge of Plaintiff's alleged harassment; and it is uncontroverted that Plaintiff failed to report her allegations of co-worker harassment and the rape to any Donnelley supervisor or manager.

Finding no genuine issue of material fact concerning Donnelley's knowledge of Plaintiff's alleged rape or her alleged harassment by her co-workers, we grant defendant's motion for summary judgment as to Counts I and II. As to the incidents allegedly involving supervisor Stewart and co-worker Buethe, we find as a matter of law that these facts as alleged do not satisfy the Seventh Circuit requirements for actionable hostile environment sexual harassment. Accordingly, we grant defendant's motion for summary judgment with regard to Counts I and II.

## C. REMAINING COUNTS

The Court next addresses defendant's motion to dismiss Counts III and IV of Plaintiffs' Amended Complaint.

### 1. Premises Liability

■ Defendant argues that it owes no duty to plaintiff to protect her from the rape that allegedly occurred on its premises. Because we have found no Indiana cases governing premises liability for rape, we examine the holdings of other jurisdictions. The traditional rule requires proof of the occurrence of prior similar crimes to establish sufficient foreseeability to create a duty in the owner of the premise to protect patrons against attacks, such as rape. *See e.g., Henley v. Pizitz Realty Co.,* 456 So.2d 272 (Ala. 1984); *Rogers v. Jones,* 56 Cal.App.3d 346, 128 Cal.Rptr. 404 (4 Dist.1976). A modern trend has held that foreseeability of a violent crime being committed on a patron is not absolutely dependent upon notice of prior crimes of a similar nature occurring on or near the premises, but may be determined from all of the circumstances present. *See Shea v. Preservation Chicago, Inc.,* 206 Ill. App.3d 657, 151 Ill.Dec. 749, 565 N.E.2d 20 (1 Dist.1990). We hold·that under either test, defendant could not have foreseen the alleged rape from all of the circumstances present. Defendant had no prior experience of any such violent crimes being committed on its premises; nor could all of the circumstances in the plant (even taking all of Plaintiffs' factual allegations to be true) have made the rape foreseeable. Without foreseeability, no duty arises and thus Donnelley cannot be held liable under a negligence theory of premises liability.[3] We grant defendant's motion to dismiss Count III.

### 2. Loss of Consortium

■ Defendant contends that because an action for loss of consortium is not available under Title VII, it is derivative of Plaintiff's state law premises liability claim and that because the premises liability claim is defective, the loss of consortium claim must fail as well. In *Arthur v. Arthur,* 156 Ind.App. 405, 296 N.E.2d 912, 913 (3 Dist.1973), the court noted that:

> ... [A] cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer. Where, for example, the claim of the injured spouse against the

---

**2.** Thus, in cases where previous complaints have been brought against a particular supervisor for sexual harassment, a company would have constructive knowledge that corrective measures are necessary; thus, inaction or a claim of ignorance would not be as persuasive as in this case, where nothing was brought to its attention and plaintiff has brought to the court's attention no prior incidences involving Stewart and other female workers.

**3.** Our conclusion is in accord with the analysis of the Restatement (Second) of Torts § 344, comment f, which requires some sort of knowledge based on past experience that there is a likelihood of misconduct on the part of third persons in general which would endanger those on the premises or awareness that the particular nature of the owner's business would place a duty on the premise owner. In this case, neither criterion apply.

alleged tort-feasor has been abrogated by statute, the right of the other spouse to recover for loss of consortium cannot exist.

Similarly, in *Greene v. Westinghouse Elec. Corp.*, 573 N.E.2d 452 (Ind.App. 5 Dist.1991), the court held that the Worker's Compensation Act, Ind.Code § 22–3–2–6, bars a cause of action for loss of consortium advanced by a spouse of an employee injured at work. We find that Mr. Jane Doe's loss of consortium claim fails because it is derivative of Mrs. Jane Doe's defective state law premises claim, because Mr. Jane Doe's exclusive remedy is under the Worker's Compensation Act, because Title VII does not recognize loss of consortium damages even if Plaintiff could successfully maintain such a claim.

### CONCLUSION

Plaintiff's complaint has raised some serious charges, which if true, portray a working environment inviting a lawsuit to be filed. That rape, or even verbal or physical intimidation of an employee could occur at any working environment is of grave concern to this court and to society as a whole. However, the existence of grievous injuries and the responsibility for them are two separate matters. Had Plaintiff at least filed one internal complaint regarding all of the abuses she allegedly suffered, this matter would contain some triable issues for a jury. However, in this case, defendant cannot be held accountable for incidents that it had no opportunity to correct. Summary judgment in favor of defendant and against Plaintiffs is therefore appropriate with regard to Counts I and II of Plaintiff's complaint. Counts III and IV are dismissed for failure to state a claim.

It is so ORDERED.