**Patricia RIPBERGER, Plaintiff,**

v.

**WESTERN OHIO PIZZA, INC., d/b/a Domino's Pizza, John Pettway and Gary Maberly, Defendants.**

No. IP 94–1515–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 16, 1995.

---

Irving Fink, Townsend Hovde & Montross, Indianapolis, Indiana, for Plaintiff.

Mitzi H. Martin, Baker & Daniels, Indianapolis, Indiana, for Defendants.

### ENTRY

BARKER, Chief Judge.

This cause is before the Court on defendant Western Ohio Pizza's ("Western Ohio") Motion for Summary Judgment and to Dismiss under Rule 12(b)(1). For the reasons discussed below, the motion is **GRANTED.**

### I. Summary Judgment Standard/Facts

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.Pro.* 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Methodist Medical Center v. American Medical Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994). In considering a summary judgment motion, a court must draw all justifiable inferences in the light most favorable to the opposing party, and must resolve any doubt against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991); *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the non-moving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the nonmoving party may not simply rest on the pleadings, but must affirmatively demonstrate by specific

factual allegations that a genuine issue of material fact exists for trial. *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991). Conclusory allegations by a party opposing a motion for summary judgment cannot defeat the motion. *Smith v. Shawnee Library System,* 60 F.3d 317, 320 (7th Cir.1995). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See, Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

The uncontroverted facts relevant to this motion are as follows. Patricia Ripberger ("Ripberger") was employed by Western Ohio as a pizza delivery driver at its 907 North Pennsylvania Street, Indianapolis, Indiana location from August, 1993 until May, 1994. On her first day of employment she attended a three-hour employee orientation led by Area Supervisor Dave Galbraith ("Galbraith"). At the orientation, Ripberger received Western Ohio's Employee Handbook, which includes a section on sexual harassment stating:

> Western Ohio Pizza, Inc. does not condone sexual harassment of any type, at any level. If you feel that you are being sexually harassed in any manner, please contact the office at once.

*Ripberger Dep.,* Exh. 6, at 5. Ripberger signed a statement affirming that she had received, read, and understood the Handbook. *Id.* at 201. She further testified at her deposition that she understood the policy to mean that she should contact either Galbraith or City Manager Beth Riley. *Id.* at 203.

1. Although Ripberger claims in her affidavit that Galbraith promised she would no longer have to work with Maberly, and that he did not keep this promise, *see, Ripberger Aff.* at ¶ 15, her deposition testimony indicates otherwise. *See, Ripber-*

## The Maberly Incident

On or about January 6, 1994, Ripberger alleges that the following occurred. She was approximately 15 minutes late arriving to work because she had been to the hospital. Defendant Gary Maberly ("Maberly") was filling in for John Pettway as store manager, and thus was acting as Ripberger's supervisor at the time. *Defendant's Brief* at 3; *Ripberger Aff.* at ¶ 11. Upon Ripberger's arrival at the store, Maberly said that she was suspended for being late. *Ripberger Aff.* at ¶ 11. She attempted to show him a statement from the hospital to explain her tardiness, but he refused to look at the statement. *Id.* Ripberger asked to speak with either Pettway or Galbraith, but Maberly refused. She started to go to the back of the store to retrieve her personal belongings, when Maberly called her a "whore" and a "bitch", grabbed her from behind, and shoved her against a soft drink machine. *Id.* at ¶ 13. Both Maberly and Ripberger spoke with Galbraith on the phone about the incident, and Galbraith said that he would come to the store later that evening to discuss it with them. *Ripberger Dep.* at 133. Galbraith came to the store several hours later to discuss the incident. Ripberger told Galbraith that she did not want anyone to be fired, but that she did not want to work with Maberly anymore. Galbraith responded by telling Ripberger that he had a talk with Maberly, and by asking her if she wanted to stay there or to leave.[1] She opted to stay because she needed the money. Galbraith gave his pager number to Ripberger, instructing her to call him if there were any further problems. Maberly apologized to Ripberger. *Id.* at 86–88, 205; *Defendant's Proposed Finding of Fact* at ¶ 8. The next day Galbraith returned to the store to follow up. Subsequently, Ripberger and Maberly continued working together. After this incident, Ripberger did not have any further problems with Maberly, and did not ask not to work with him again. *Ripberger Dep.* at 89.

*ger Dep.* at 87–89. The Seventh Circuit has long noted that a conflict between a party's deposition and a later affidavit does not create a material dispute requiring a trial. *See Pries v. Honda Motor Co., Ltd.,* 31 F.3d 543, 545 (7th Cir.1994).

*Alleged Harassment by John Pettway*

Ripberger alleges that from the time she began working at Western Ohio, and throughout the period of her employment, Defendant John Pettway ("Pettway"), Manager of the Western Ohio store where Ripberger worked, repeatedly sexually harassed her. Pettway's alleged conduct included touching and grabbing Ripberger, touching her breasts, trying to unzip her slacks, trying to lift up her shirt, commenting on her underclothes, placing pizza dough down her pants and shirt, and making lewd and suggestive remarks. *Complaint* at ¶¶ 7–9. Ripberger told Pettway that she wanted this conduct to stop, but she never reported it to Galbraith or Riley or anyone else employed by Western Ohio. *Ripberger Dep.* at 218.

Plaintiff claims that both Pettway's conduct and the Maberly incident created a hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), et seq. She further claims that the conditions under which she worked were sufficiently intolerable to cause her to terminate her employment, which termination amounted to constructive discharge.[2] Defendant Western Ohio moves for summary judgment and dismissal, claiming that the alleged conduct was not sufficiently hostile or pervasive to amount to sexual harassment. Western Ohio argues that in any event, it cannot be held liable for Maberly's or Pettway's conduct because it responded effectively to the Maberly incident and it had no notice of Pettway's alleged harassment of Ripberger.

## II. Analysis

◼ Title VII of the Civil Rights act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.[3] *See, Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

◼ A two part test applies to determine whether an employee may state a claim for Title VII sexual harassment. Under this test, the employee must allege that:

> [1] her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment [citations omitted] ... and [2] that a specific basis exists for imputing the conduct that created the hostile work environment to the employer.

*Murray v. New York University College of Dentistry,* 57 F.3d 243, 249 (2nd Cir.1995); *see also, Carr v. Allison Gas Turbine Div., General Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994) (employing the same framework, but applying a negligence test for employer liability where the harasser was a co-employee rather than a supervisor). We will address each step of this two-part test in turn.

### A. Existence of a Hostile Environment

◼ A hostile or abusive environment arises when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment...." *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2405. The conduct in question must have the "purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.,* quoting, 29 C.F.R. § 1604.11(a)(3). Additionally, the alleged conduct must be "severe and pervasive" enough to create both an objec-

---

**2.** The court notes that Ripberger's complaint with regard to the Maberly incident is not an action for assault and battery, but is rather an action for hostile work environment sexual harassment under Title VII. *See, Plaintiff's Brief,* at 7–8.

**3.** Title VII sexual harassment generally falls into two categories: quid pro quo and hostile work environment. *Saxton v. American Tel. & Tel. Co,* 10 F.3d 526, 532 (7th Cir.1993). Because Ripberger does not allege quid pro quo harassment, we will discuss only the standards for hostile environment harassment.

tively and a subjectively hostile environment. *Harris v. Forklift Sys., Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Saxton v. Am. Tel. and Tel. Co.*, 10 F.3d 526 (7th Cir1993).

### 1. Objective Test

While drawing the line between what is objectively hostile and what is not objectively hostile is difficult, the case law sets forth some guidelines which help in the analysis. In *Baskerville v. Culligan Int'l Co.*, the Seventh Circuit states that on one side of the line lie "sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures" while on the other side lies "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." 50 F.3d 428, 430 (7th Cir.1995), *citing*, *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405; *Harris*, —— U.S. at ——, 114 S.Ct. at 370; *Carr*, 32 F.3d at 1009–10. The Supreme Court has also set forth factors relevant to the determination of what makes a work environment hostile. In *Harris*, the Court points out that the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" are important in determining whether an environment is hostile, but that "no single factor is required" and that the situation must be viewed as a whole. —— U.S. at ——, 114 S.Ct. at 371. The Seventh Circuit has held that "relatively limited" inappropriate or offensive behavior does not rise to the level of pervasiveness required for a hostile work environment claim. *Saxton*, 10 F.3d at 534 (supervisor's unwelcome sexual advances to plaintiff on two occasions do not amount to hostile environment sexual harassment); *see also, Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995) ("Isolated and innocu-

ous incidents do not support finding of sexual harassment."). "Though sporadic behavior, if sufficiently abusive, may support a Title VII claim, success often requires repetitive misconduct." *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1345 (7th Cir.1995). Furthermore, "in order for conduct to be considered sexual harassment, it would have to have occurred because of [plaintiff's] sex." *Sink v. Knox County Hospital*, 900 F.Supp. 1065, 1075 (S.D.Ind.1995).[4]

### a. Maberly Incident

 There is nothing in the record to indicate that Maberly's inappropriate and aggressive actions toward Ripberger in early January, 1994 were at all related to her sex. This alone precludes it from being considered sexual harassment. In addition, it was an isolated, one-time incident. While Maberly's actions were highly unprofessional, clearly "hostile" and cannot be condoned, they were not sexual harassment.

Furthermore, even if the Maberly incident did create a hostile work environment, Western Ohio's response was an adequate remedy. Ripberger fails to produce evidence of a significant shortcoming in Western Ohio's response that would make them liable for Maberly's actions. The reasonableness of an employer's response to allegations of sexually harassment depends upon the gravity of the harassment. *Baskerville*, 50 F.3d at 432. This was an isolated incident which does not appear to have had any significant or lasting effect on Ripberger's work environment. After Area Supervisor Galbraith spoke with Ripberger and Maberly about the incident, Ripberger had no further problems with Maberly. *See, Dockter v. Rudolf Wolff Futures, Inc.*, 913 F.2d 456, 461 (7th Cir.1990) (multiple incidents of sexual misconduct during plaintiff's first two weeks of work did not support hostile environment claim where they ceased after plaintiff reprimanded the aggressor); *Sink*, at 1075 (where no further acts occur after complaint, the Court is enti-

---

4. *See also, Vore v. Indiana Bell Telephone Co.*, 32 F.3d 1161 (7th Cir.1994) (if workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated); *Bolden v.*

*PRC Inc.*, 43 F.3d 545 (10th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995) (general harassment, if not racial or sexual, is not actionable under Title VII).

tled to infer that the steps taken were reasonable and adequate).

"Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Saxton,* 10 F.3d at 536 (citations omitted); *Swentek v. USAIR, Inc.,* 830 F.2d 552 (4th Cir.1987) (airline not liable for pilot's harassment of flight attendant when flight attendant complained, airline responded by issuing warning to pilot, and no further complaints were lodged against pilot). Although it is unclear whether Galbraith's remedial efforts met Ripberger's expectations, that is not the relevant inquiry. *See, Spicer v. Commonwealth of VA Dept. of Corrections,* 66 F.3d 705 (4th Cir.1995) (employer need not make the most effective response possible). Under the circumstances, we find that Western Ohio's response to the Maberly incident was timely and reasonably likely to prevent the conduct from recurring. *See, Saxton,* 10 F.3d at 535.[5]

### b. Pettway's Conduct

■ In contrast, Pettway's conduct, as alleged by Ripberger, is a classic example of hostile environment sexual harassment. Ripberger alleges a continuous course of conduct which began as soon as she started working for Western Ohio and continued throughout her employment. She alleges that Pettway, her immediate supervisor, fondled her breasts, put his hands on her buttocks, put pizza dough down her blouse and pants, and made lewd and suggestive comments to her. *Complaint* at ¶¶ 7–9; *Ripberger Aff.* at ¶ 5. This conduct is neither isolated nor innocuous. Taking the allegations as true, we have no difficulty in finding that Pettway's conduct meets the objective test for Title VII hostile work environment sexual harassment.

### 2. Subjective Test

■ Finally, we must determine whether Pettway's conduct was also subjectively hostile. In other words, we must determine whether Ripberger, in fact, found Pettway's actions toward her to be severe and pervasive enough to alter the conditions of her

work environment. Ripberger states that she was afraid to go into the cooler or bathroom at work as a result of Pettway's conduct, *Ripberger Aff.,* at ¶ 7, and that at times she "felt ill arising from so dreading going to work and having to fight off Pettway's constant touching and comments ..." *Id.* at ¶ 18. She "hated going to work", but "forced [herself] to go out of [her] desperate need for the job." *Id.* at ¶ 17. This is more than sufficient to satisfy the requirement that the harassing conduct create a subjectively hostile environment.

### B. Employer Liability

Having determined that Pettway's conduct towards Ripberger was sufficiently hostile and pervasive to constitute sexual harassment, we now consider the second part of the analysis: whether the corporate employer, Western Ohio, can be held liable for Pettway's sexual harassment of Ripberger. Western Ohio argues that it cannot be held liable for Pettway's conduct because Ripberger never reported it and as a result Western Ohio did not have an opportunity to remedy the harassment.

■ It is true that in cases of sexual harassment by a co-employee, the employer is not liable unless it "knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 464 (7th Cir.1990). However, a different standard applies where, as here, an employee alleges that she was sexually harassed by her supervisor. *See, Carr,* 32 F.3d at 1008 ("in a case ... in which the harassment is by coworkers *rather than by supervisors,* the principal questions to be answered are ... whether management knew or should have known about the harassment yet failed to take appropriate remedial action.") (emphasis added).

The Supreme Court, in *Meritor,* declined to issue a rule on employer liability, instead instructing courts to "look to agency principles for guidance". 477 U.S. at 72, 106 S.Ct.

---

5. Because we find that the Maberly incident does not satisfy the objective standard for hostile environment sexual harassment, we need not consider whether Maberly's conduct meets the subjective test.

at 2408. (specifically referring to the Restatement (Second) of Agency §§ 219–238 (1958)). Following the Supreme Court's suggestion, the Seventh Circuit has held that "[w]hether sexual harassment by a supervisor can be imputed to the employer corporation is governed by the principles of agency." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir.1994);[6] *see also Volk,* 845 F.2d at 1436.

■ The Restatement (Second) of Agency ("Restatement") § 219 provides three bases for holding employers liable for sexual harassment by their employees. Employers are held responsible for an employee's sexual harassing conduct if (1) the conduct was committed by the employee "within the scope of [his] employment"; (2) the offending employee relied upon apparent authority or was aided by the agency relationship; or (3) the employer was itself negligent, i.e. failed to take remedial action upon notice of the harassment. *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 106 (3rd Cir. 1994); *Bolden v. PRC Inc.,* 43 F.3d 545, 551, n. 1 (10th Cir.1994) *cert. denied,* —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995); *Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d 1323, 1330 (10th Cir.1994).[7] The Court will address each of these bases for liability in turn.

*1. Scope of Employment*

■ Restatement § 229 provides a general definition of "scope of employment", stating that "[t]o be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized."

The comments to the Restatement provide further explanation of the meaning of "scope of employment":

> "Proof that the actor was in the general employment of the master does not of itself create an inference that a given act done by him was within the scope of employment. If, however, it is also proved that the act tended to accomplish an authorized purpose ... there is an inference that it was within the scope of employment."

*Restatement* § 228 Cmt. b. Even though some acts forbidden by the employer, including tortious or criminal acts, may be considered within the scope of employment, the "master is not responsible for acts which are clearly inappropriate or unforeseeable in the accomplishment of the authorized result." *Restatement* § 231 Cmt. a.; § 229.

Several courts have held that sexual harassment is, by its very nature, not within the scope of employment. *See, Jansen v. Packaging Corp of America,* 895 F.Supp. 1053, 1061, n. 9 (N.D.Ill.1995) (holding that Restatement § 219(1) is inapplicable to alleged sexual harassment by a supervisor: "Was sexual harassment within the scope of Antoni's employment? Of course not."); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417–18 (10th Cir.1987) ("sexual harassment simply is not within the job description of any supervisor or any other worker in any reputable business") (citation omitted); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1559 (11th Cir.1987) (recognizing that acts are not within the scope of employment, and a master is insulated from liability under Restatement § 219(1), "where the servant was acting entirely for his own benefit").

---

**6.** The Seventh Circuit did not apply the principles of agency to the allegations of sexual harassment by a supervisor in *Donnelley* because it held that the alleged conduct did not rise to the level of a Title VII violation.

**7.** The Second Circuit stated this three-way approach as follows:

> [A]n employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority in order to further harassment,

or if he was aided by the existence of the agency relationship ... [citations omitted]. In contrast, where a low level supervisor does not rely on his supervisory authority to carry out harassment, ... the employer will not be liable unless 'the employer either provided no reasonable avenue for complaint or knew of harassment but did nothing about it.' *Karibian v. Columbia University,* 14 F.3d 773, 780 (2nd Cir.1994), *quoting, Kotcher v. Rosa & Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2nd Cir.1992).

Although the effect is to restrict Ripberger's ability to recover for the harassment she endured, we must agree that the type of conduct to which Pettway subjected Ripberger cannot be considered to be authorized, appropriate, foreseeable, or "actuated by an intent to serve" the employer. *See, Restatement* § 235 Cmt. a. ("Conduct is within the scope only if the servant is actuated to some extent by an intent to serve his master."). Therefore, we find that Pettway's harassment of Ripberger was not within the scope of his employment and that Western Ohio cannot be held liable on that basis.

### 2. Apparent Authority

■ The scope of apparent authority in the sexual harassment context has not been clearly defined by the Seventh Circuit. *See, e.g., Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990) (stating that the test for apparent authority under Title VII is not necessarily the same as the test to bind third parties to contracts). The Northern District of Illinois has recently held that an employer is strictly liable for the conduct of "management-level employees who had the authority to hire and fire employees", *Valadez v. Uncle Julio's of Illinois*, 895 F.Supp 1008, 1015 (N.D.Ill.1995), *citing, Donnelley*, 42 F.3d at 446; *see also, Volk v. Coler*, 845 F.2d 1422, 1436 (7th Cir.1988). However, less than two weeks later, another judge from the same court held that for the employer to be liable, it is not enough that the person doing the harassing be a management employee with power to hire, fire or promote, but that that person must actually invoke that authority to facilitate the harassment, *Jansen v. Packaging Corp. of America*, 895 F.Supp. 1053, 1066 (N.D.Ill.1995), *citing, Gary v. Long*, 59 F.3d 1391, 1397 (D.C.Cir.1995); *Shager*, 913 F.2d at 404–405. The seeming tension between cases which limit employer liability and those

which affirm employer liability for acts of supervisors was addressed in *Shager*, in which the Seventh Circuit stated that an employer is liable for acts of supervisors where

> from the outside, at least, it looks as if [the supervisor] is doing his job, which is not the case when one worker sexually harasses another.... In both sorts of case[s], however, the ultimate concern is with confining the employer's or principal's liability to the general class of cases in which he has the practical ability to head off the injury to his employee's, or other agent's, victim.

913 F.2d at 405.

This interpretation of the scope of apparent authority appears to be in line with the trend in other Circuits. The Third Circuit, for example, finds apparent authority only if belief in the agent's apparent authority is reasonable. *Bouton*, 29 F.3d at 109. The *Bouton* court held that "an effective grievance procedure—one that is known to the victim and that timely stops the harassment—shields the employer from Title VII liability for hostile environment" *Id.*, at 110.[8]

In *Gary v. Long*, the District of Columbia Circuit held that where "the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences," the employer may not be held liable for a supervisor's hostile work environment harassment on the basis of "apparent authority". 59 F.3d at 1398. That Court rejected a broad interpretation of the concept of apparent authority in an agency relationship:

> dence that supervisor "ever invoked [his] authority in order to facilitate his harassment of plaintiff"); *but see, Kauffman v. Allied Signal, Inc. Autolite Div.*, 970 F.2d 178, 184 (6th Cir.1992), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (where the incidents take place at work, and the employer has a sexual harassment policy, the employer is liable for the acts of its supervisors).

---

8. *see also, Karibian v. Columbia University* 14 F.3d 773, 780 (2nd Cir.1994) ("an employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship."); *Hirschfeld v. New Mexico Corrections Dep't.*, 916 F.2d 572, 579 (10th Cir.1990) (employer not liable absent evi-

In a sense, a supervisor is always 'aided in accomplishing the tort by the existence of the agency' because his responsibilities provide proximity to, and regular contact with, the victim.... [H]owever, such a reading of section 219(2)(d) 'argues too much'.... The commentary to the Restatement suggests that this exception embraces a narrower concept that holds the employer liable only if the tort was 'accomplished by an instrumentality, or through conduct associated with the agency status.'

*Id.* at 1397 (citations omitted).

Furthermore, the comments to the Restatement confirm that:

[i]f a person has information which would lead a reasonable man to believe that the agent is violating the orders of the principal or that the principal would not wish the agent to act under the circumstances known to the agent, he cannot subject the principal to liability.

Restatement § 166 Cmt. a; *see also, Gary,* 59 F.3d at 1398.

Defendant Western Ohio has a corporate policy prohibiting sexual harassment and sexual discrimination. The policy states that any such acts will not be tolerated and complaints should be made to members of higher management if necessary. Ripberger was given a copy of the employee handbook which included this policy and signed a statement that she had read and understood it.

Ripberger calls into question the adequacy of Western Ohio's sexual harassment policy and their communication of it to her. Specifically, she claims that she was not given an opportunity to study the employee handbook before being asked to sign a statement that she had read and understood it. Even if she had not read and understood the policy at the time she signed the statement, it is quite apparent from the record that she, in fact, did understand the policy and grievance process. She indicated in her deposition testimony that she was aware of the policy and that she knew whom to call to report any sexual harassment. *Ripberger Dep.* at 203–205. She had, in fact, called Area Supervisor Galbraith to complain of the incident with Gary Maberly in January, 1995, and Galbraith subsequently gave her his beeper number and told her to beep him if she had any further problems. *Id.* at 205.

Plaintiff was both aware of the company policy against sexual harassment and knew that she could contact at least Galbraith or Riley to report Pettway's harassment. This is very different from the situation in *Sparks v. Pilot Freight Carriers, Inc.,* in which the Eleventh Circuit found that the harasser, who was the highest ranking supervisor in the region, "used the authority delegated to him by [the employer] to assist him in harassing Sparks". *Sparks,* 830 F.2d 1554, 1560 (11th Cir.1987). Sparks' supervisor had said things to her such as "your fate is in my hands", and "you'd better be nice to me". *Id.* at 1556. Ripberger does not allege that Pettway or anyone else ever said anything to make her believe that he had authority, apparent or otherwise, to harass her. Her claim that he had "apparent authority" to harass her is instead based entirely on her subjective, unsupported belief that Western Ohio would tolerate Pettway's actions because Galbraith "seemed" to her "to be such close buddies with Pettway". *Ripberger Aff.* at ¶ 10. Ripberger points to no evidence to support this assertion. In fact, the evidence points in the other direction. Galbraith responded promptly to her complaint regarding Maberly's behavior.[9] Even if a complaint to Dave Galbraith would have proven to be futile, there is still no apparent reason why Ripberger could not have reported Pettway's conduct to someone else in Western Ohio management, such as City Manager Riley.

In sum, we find that Ripberger was aware of Western Ohio's sex harassment policy; she was aware of whom to contact to report sex harassment; and she had in fact contacted Dave Galbraith to report an incident of hostile behavior (although not sexual harassment). Her belief that Pettway had what she calls "apparent authority" to harass her

---

**9.** Additionally, we note that Pettway was discharged for "unsatisfactory job performance" on July 15, 1994, 3 months after Ripberger left Western Ohio. While this fact is not directly relevant to Ripberger's claim, it does call into question the reasonableness of her belief that Pettway's friendship with Galbraith would have made any complaints against him futile.

has no basis in the facts as they have been presented to us. Therefore, Western Ohio cannot be held liable for Pettway's harassing conduct on the basis of apparent authority.

### 3. Negligence

■ The Seventh Circuit has clearly established a test to determine if an employer is liable for sexual harassment based on its own negligence. Under the negligence theory, "the employer, provided it has used due care in hiring the offending employee in the first place,[10] is liable for that employee's torts against a coworker only if, knowing or having reason to know of the misconduct, the employer unreasonably fails to take appropriate corrective action." *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir.1990); *Baskerville*, 50 F.3d 428.

Western Ohio is not liable under this theory either. Ripberger does not even allege that anyone in Western Ohio's management knew of the alleged harassment, and she admits that she never attempted to bring the harassment to the attention of Western Ohio. Neither does she allege that Western Ohio had reason to know of the harassment. As this Court noted in *Doe v. R.R. Donnelley & Sons*, if, for example, there had been previous complaints to the employer about the supervisor, a company might have constructive knowledge of the incident, and probably would not be isolated by lack of knowledge and a sexual harassment policy. *Donnelley*, 843 F.Supp. 1278, 1283 n. 2 (S.D.Ind.1994) (suggesting that constructive knowledge may exist if there have been prior complaints to the employer about the supervisor). Ripberger does not suggest that there had been prior incidents by Pettway while he was working for Western Ohio.

Although the absence of notice and the presence of a sexual harassment policy cannot insulate an employer in all instances,

*Meritor*, 477 U.S. at 72–73, 106 S.Ct. at 2408–09, in this case, where the harasser was not acting within the scope of employment nor within his apparent authority, and where the employer did not know or have a reason to know of the harassment, the court finds that the employer cannot be held liable for the harassment. Therefore, Western Ohio's Motion for Summary Judgment is **GRANTED**.[11]

### C. Individual Liability of Defendants Pettway and Maberly Under Title VII

■ Finally, having determined that Western Ohio is entitled to summary judgment, we must now address the question of the liability of individually named defendants, Pettway and Maberly. Although it appears that Ripberger names them merely as agents of the employer, and not in their individual capacity, they are nonetheless included in the caption. Therefore, we will briefly address the question of individual liability under Title VII.

Title VII imposes liability for sexual harassment upon an "employer" if the employer is responsible for the discriminatory conduct alleged by the plaintiff. Under Title VII as codified in 42 U.S.C. § 2000e(b), the term "employer" is defined as:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person....

The Seventh Circuit has recently resolved a split in the Circuit and found that individuals are not liable pursuant to this statutory language unless they independently meet the definition of "employer." *Equal Employment Opportunity Comm'n v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995); *see also, Daulo v. Common-*

---

10. Ripberger does not allege that Western Ohio failed to use due care in hiring Pettway.

11. Plaintiff also bases her claim of constructive discharge on Pettway's conduct and the Maberly incident. The standard for constructive discharge is that the "discrimination to which [plaintiff] was subjected was serious enough to cause reasonable person to quit." *Carr*, 32 F.3d

1007; *Chambers v. American Trans Air, Inc.*, 17 F.3d 998 (7th Cir.1994), *rehearing and suggestion for rehearing denied, cert. denied,* —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419. Because we have already determined that there is no basis upon which to hold Western Ohio liable for Pettway's or Maberly's conduct, we need not determine if the same conduct meets the standard for constructive discharge.

wealth Edison, 892 F.Supp. 1088, 1092 (N.D.Ill.1995) (dismissing all individual defendants from Title VII claims). In *AIC Sec. Inv., Ltd.,* the court reasoned that the legislative purpose of Title VII was to impose liability only on those entities large enough to survive the "hardship of litigating discrimination claims." *Id.* at 1281. Additionally, the court reasoned that the legislature set up damage awards, such as recovery of back pay and reinstatement, that are only available from an "employer" and thus did not contemplate that individuals would be liable under Title VII. *Id.*[12]

In the case at bar, Defendant Pettway was a supervisory employee of Western Ohio.[13] However he is not individually liable under Title VII because he was a supervisor, not Plaintiff's employer.[14] Therefore, Defendants' motion for summary judgment and to dismiss is hereby **GRANTED,** as none of the named defendants are subject to liability under Title VII.

### III. CONCLUSION

For the reasons explained above, the court rules that although John Pettway's treatment of Ripberger during the course of her employment with Western Ohio meets the standards for hostile work environment sexual harassment, none of the named defendants can be held liable under Title VII for this harassment. Therefore, Defendant's Motion for Summary Judgment and to Dismiss is granted.

It is so ORDERED.

---

**12.** When Congress passed the Civil Rights Act of 1991, compensatory and punitive damages became available to successful plaintiffs under Title VII cases. While these are more typical of penalties that are assessed against individuals, Congress placed caps on the total amount of these damages by enacting a sliding scale which varies according to the number of employees of the liable party. Congress enacted no cap for individuals. The court reasoned that the omission to deal with individual liability "implies [that] it did not consider individuals liable." *AIC Sec. Inv., Ltd.,* 55 F.3d at 1281.

**13.** Because we have already determined that Maberly's conduct is not actionable under Title VII, we need not address the question of his individual liability.

**14.** Plaintiff in the case at bar does not allege that either Pettway or Maberly was Plaintiff's "employer," only that they were liable as agents of the employer.